UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

CINDITA CUNNINGHAM and
FRAZIER CUNNINGHAM,

    Debtors.
_____/

Case No. 12-40018
Chapter 7
Hon. Walter Shapero

TIMOTHY J. MILLER,

    Plaintiff,

v.

Adv. Pro. No. 14-05046

CINDITA CUNNINGHAM and
FRAZIER CUNNINGHAM,

    Debtors.
_____/

## OPINION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

BACKGROUND FACTS AND PROCEDURAL HISTORY

On January 3, 2012, Cindita and Frazier Cunningham ("Debtors" or "Defendants") filed their Chapter 7 bankruptcy petition. Timothy Miller ("Trustee") was appointed Chapter 7 trustee. During the course of, and in the bankruptcy proceeding, the Debtors were subject to a series of motions by the Trustee in connection with discovering and seeking turnover of assets, and for contempt. On February 23, 2012, the Trustee filed a Motion to Turnover Undisclosed and Non-Exempt Property in the bankruptcy case and a Section 727 Complaint seeking denial of discharge against the Debtors, on grounds of concealment of assets. On receipt of the Motion

1

and Complaint, Ms. Cunningham contacted their counsel, Mr. Fanta, who assured Ms. Cunningham that the Motion and Complaint would best be dealt with by dismissing their bankruptcy case and that he would contact the Trustee.

On March 14, 2012, based on Debtors' lack of response to the Motion, the Court entered an Order Granting the Trustee's Objection to the Debtors' Claim of Exemptions, Motion for Turnover, and for 2004 Examinations of the Debtors. Ms. Cunningham again contacted Mr. Fanta to determine how he was dealing with these issues, but received no response. On April 3, 2012, a Default Judgment denying the Debtors' discharge was entered in the Section 727 adversary proceeding.

On April 24, 2012, the Trustee filed a Motion for Order to Show Cause Why Debtors Should Not Be Held in Contempt for Failure to Comply with the Court's March 14, 2012 Order (which was denied without prejudice on various grounds on May 10, 2012).. Upon receipt of that Motion, and still having not heard anything from Mr. Fanta, the Debtors sought new counsel and filed a notice of substitution of counsel on May 8, 2012. On May 14, 2012, the Trustee filed a new Motion to Hold Debtors in Contempt of the March 14, 2012 Order, and, on May 25, 2012, following a hearing on the Trustee's Motion for Contempt (to which the Debtors had responded) the Court entered an Order Granting the Trustee's Motion to hold the Debtors in contempt. That Order directed the Debtors to appear for a 2004 Examination on June 6, 2012. At that 2004 Examination, Trustee's counsel discovered that the bankruptcy schedules initially filed by Mr. Fanta differed from those actually previously signed by the Debtors. On June 15, 2012, a Motion for Sanctions for Debtor Attorney Misconduct under Rule 9011 was filed by the Trustee against Mr. Fanta. That Motion was resolved via a stipulation between the Trustee and Mr.

Fanta, and, on June 28, 2012, the Court entered an Order requiring payment by Mr. Fanta of a material sum, including disgorged attorney fees and sanctions.

This case was thereafter reassigned to the undersigned bankruptcy Judge and, thereafter, on September 16, 2013, the Trustee filed his Final Account Certification. On October 17, 2013, the bankruptcy case was closed.

On October 7, 2013, prior to the closing of the bankruptcy case and without advising the Trustee, the Debtors had filed a malpractice case against Mr. Fanta and his Washtenaw Legal Center P.C. entity in the Washtenaw County Circuit Court, Case No. 13-984-NH. The complaint included the following allegations:

1. On August 29, 2010, the Debtors retained Mr. Fanta for the purpose of preparing, filing, and litigating their bankruptcy case;

2. On August 29, 2010, Mr. Fanta obtained from the Debtors a list of all of their debts and creditors and began to prepare the necessary paperwork to file their petition;

3. On January 2, 2012, Mr. Fanta filed a petition for relief under Chapter 7 of the Bankruptcy Code on behalf of the Debtors;

4. The paperwork filed by Mr. Fanta differed significantly from the documents actually signed by the Debtors;

5. The paperwork prepared and filed by Mr. Fanta was incorrect in the scheduling or listing of the Debtors' assets, which ultimately resulted in assets that should have been otherwise exempt from the bankruptcy estate being included in the estate and otherwise lost by the Debtors;

6. Due to the errors in the documents filed by Mr. Fanta, the Trustee and Judge raised various issues;

7. Mr. Fanta failed to object to the issues raised by the Trustee and Judge; failed to attempt to correct, amend, or otherwise modify the documents in order to address those issues; and failed to take any action to protect the Debtors;

8. Mr. Fanta abandoned the Debtors, allowing them to incur "significant wrath of the Judge and the Trustee", resulting in significant prejudice to

3

them and a loss of assets that would have otherwise been exempt from the bankruptcy estate;

9. The Debtors obtained the services of another attorney, on an emergency basis, who attempted to correct the errors cause by Mr. Fanta, but the new attorney was unable to correct the mistakes;

10. As a result of the irreversible errors, numerous assets of the Debtors which might otherwise have been exempted from the bankruptcy case were not, and they were included and disposed of (at a significant loss) in order to satisfy the Debtors' debts, which resulted in substantial monetary losses to the Debtors;

11. Mr. Fanta deviated from the applicable standards of practice, and committed negligence, and breached the contract of retention with and to the Debtors in a manner which includes, but is not limited to the following:

    (a) Failing to properly fill out the necessary documents for filing the Petition for Bankruptcy on behalf of the Debtors;

    (b) Failing to properly edit, amend, correct, or otherwise prepare the necessary documents;

    (c) Filling in information in the bankruptcy documents which was different from the information provided by the Debtors;

    (d) Fraudulently or negligently entering information into the bankruptcy documents which he knew or reasonably should have known was not true or accurate;

    (e) Failing to correct the documents when he knew or reasonably should have known that they were incorrect or incomplete;

    (f) Failing to properly respond to the bankruptcy judge or the Trustee when objections were made to the documents that were filed on behalf of the Debtors;

    (g) Abandoning the Debtors in the midst of their bankruptcy case;

    (h) Breaching the contract of employment by failing to properly and professionally prepare, file, or otherwise litigate the bankruptcy case.

On July 14, 2014, the Trustee filed a Motion to Reopen the Debtors' bankruptcy case to enable him to pursue the malpractice claim, arguing that it was property of the estate. On August

28, 2014, after a hearing, the Court entered an Order Granting the Trustee's Motion to Reopen the Case.

On October 3, 2014, the Trustee filed an adversary complaint against the Debtors seeking a judgment declaring that the malpractice claim is the sole property of the bankruptcy estate. On October 30, 2014, the Debtors/Defendants filed an Answer and, on January 16, 2015, the Trustee moved for summary judgment. The Trustee argues that the bankruptcy estate is the sole owner of the malpractice cause of action because the entirety of the action is rooted in Mr. Fanta's pre-petition conduct or a failure to address or correct that pre-petition conduct. On January 30, 2015, the Defendants filed a Cross-Motion for Summary Judgment. They argue that the malpractice cause of action is not part of the bankruptcy estate because (1) they had not suffered any injury as of the commencement of their bankruptcy case because the mere act of filing the improper petition was not the proximate cause of their injury; (2) Mr. Fanta's filing of the improper petition merely created the potential for injury, which could have been addressed post petition by filing post petition amendments; (3) Mr. Fanta's failure to properly advise them or respond to the various Motions and the adversary proceeding filed by the Trustee was the proximate cause of their injuries; and (4) the actions taken by Mr. Fanta, or the actions he failed to take post-petition serve as the basis for the malpractice claim. The Defendants filed a Response to the Trustee's Motion on January 30, 2015, and the Trustee filed a Response to the Defendants' Motion on February 16, 2015.

The Court held a hearing on February 26, 2015, and took the matter under advisement.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(\E) (orders to turn over property of the estate).).

## APPLICABLE LAW

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure 7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party bears the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party once the moving party has met its burden, and the nonmoving party must then establish that a genuine issue of material fact does indeed exist. *Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

### B. 11 U.S.C. § 541

11 U.S.C. § 541(a)(1) states: "(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of

this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

## DISCUSSION

The recited facts in this matter are undisputed. The only issue currently before the Court is whether the malpractice claim constitutes property of the bankruptcy estate.

The Trustee argues that the malpractice cause of action qualifies as property of the estate because the entirety of the action is sufficiently rooted in Mr. Fanta's pre-petition conduct (filing the incomplete and incorrect petition and schedules). The Defendants argue that the cause of action cannot qualify as property of the estate because there was no pre-petition injury and the injury caused by Mr. Fanta was a result of his post-petition failure to amend the petition or respond to the Trustee's Objection to Debtors' Claim of Exemptions, Motion for Turnover, Motion for 2004 Examination, and the adversary complaint.

A debtor's filing of a bankruptcy petition commences a bankruptcy case, creating a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The scope of what constitutes property of a bankruptcy estate is broad. "Pre-petition causes of action belong to the bankruptcy estate and post-petition actions belong to the debtor." *In re Underhill*, 579 F. App'x 480, 482 (6th Cir. 2014). "State substantive law determines the "nature and extent" of causes of action, *see Tyler v. DH Capital Mgmt., Inc.,* 736 F.3d 455, 461 (6th Cir.2013), but federal bankruptcy law dictates when that property interest becomes property of the estate for purposes of § 541, *see In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1172 (6th Cir.1990)." *Id*.

7

In *Underhill*, the Sixth Circuit Court of Appeals reiterated the appropriate approach for determining whether a cause of action constitutes property of the bankruptcy estate as it was set forth in *Tyler*:

> That case explained that most courts apply *Segal v. Rochelle,* 382 U.S. 375, 86 S. Ct. 511, 15 L.Ed.2d 428 (1966)—which defined pre-petition assets under a previous version of the Code as those "sufficiently rooted in the pre-bankruptcy past" of the debtor—to the current version of the Code. *Tyler,* 736 F.3d at 461–62 (collecting cases). **And we recognized that "[p]re-petition conduct or facts alone will not 'root' a claim in the past; there must be a pre-petition violation."** *Id.* **at 462. That is, a cause of action qualifies as bankruptcy estate property only if the claimant suffered a pre-petition injury.** *See id.; In re Witko,* 374 F.3d 1040, 1044 (11th Cir.2004) (concluding that legal-malpractice claim belonged to the debtor because he "did not suffer any harm from the alleged legal malpractice prior to or contemporaneous with filing his bankruptcy petition"); *Cook v. Baca,* 512 Fed.Appx. 810, 820 (10th Cir.2013) ("Though ... the alleged conspiracies involved property that was the subject of dispute between the parties prior to the bankruptcy filing, the alleged constitutional injuries did not exist prior to the filing."); *In re Pettibone Corp.,* 90 B.R. 918, 932 (Bankr.N.D.Ill.1988) ("[I]f a tort claimant whose employer had purchased a defective product pre-petition is exposed only post-petition to that product and sustains bodily injury only after filing of the manufacturer's bankruptcy, the claimant's bankruptcy claim arises post-petition.").

*In re Underhill*, 579 F. App'x 480, 482 (6th Cir. 2014) (emphasis added). "All causes of action that hypothetically could have been brought pre-petition are property of the estate." *Tyler* at 462.

Here, the record lacks evidence of a pre-petition injury. While the Trustee correctly points out that the filling out and filing of the inaccurate petition and schedules started the chain of events, this malpractice claim requires more to have bcome actionable. In this case that more occurred post petition. The elements of a legal malpractice cause of action are: "(1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v. Petrella*, 261 Mich. App. 705, 712; 683 N.W.2d 299 (2004) (citations omitted). "A claim of malpractice further requires a showing of actual injury caused by the malpractice, not just the potential for injury." *Colbert v. Conybeare Law Office*, 239

Mich. App. 608, 620; 609 N.W. 2d 208 (2000) (citation omitted). Here, although there were clearly issues with the bankruptcy petition and schedules when they were filed, there was no cognizable violation or injury resulting therefrom pre-petition. Mr. Fanta's filing of the incorrect petition and schedules may have created the potential for injury, but such injury could have been addressed by timely filing post-petition amendments.The failure to appropriately do so matured the cause of action. The bankruptcy estate did not exist until the petition was filed and the harm to the Defendants (losing property that would have otherwise been exempt and/or being denied a discharge for instance, or other consequence) could not have occurred until after the petition was filed. While it can be fairly said that the subject cause of action was, at least in a broad sense, "rooted" in the pre-petition conduct of Mr. Fanta, to continue the metaphor, it did not actually flower until post-petition, when the actual injury occurred. It is that flowering, or injury, that the indicated state law indicates is a necessary element of, or a predicate to, the existence of a malpractice cause of action. Therefore, in this case the malpractice claim is not property of the bankruptcy estate under § 541(a)(1).

## CONCLUSION

Accordingly, the Court concludes that the Defendants' Motion for Summary Judgment is granted and that Trustee's Motion for Summary Judgment is denied. An order is being contemporaneously entered.

**Signed on June 25, 2015**

                                          **/s/ Walter Shapero**

```
                                        Walter Shapero
                                        United States Bankruptcy Judge
```